**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

KEVIN LEON MORMON,            *

      Petitioner,            *

     v.            *            **PWG-12-cr-592**
                                   **PWG-16-cv-1146**
UNITED STATES OF AMERICA,            *

      Respondent.            *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Pending before the Court is Petitioner Kevin Leon Mormon's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, which collaterally challenges a 2013 conviction for conspiracy to distribute 280 grams or more of cocaine base in violation of 21 U.S.C. § 846, for which Mormon is currently serving a twenty-five year sentence. Verdict Form, ECF No. 42; Judgment, ECF No. 55.[1] Mormon argues that his conviction should be vacated because (1) the Government elicited a confession that played a key role in his conviction in violation of his Sixth Amendment right to counsel; (2) the Court admitted out-of-court statements that violated his Confrontation Clause rights; (3) he received ineffective assistance of counsel at trial and on appeal; (4) the Government committed various forms of prosecutorial misconduct. Pet'r's Mot., ECF No. 85. Mormon filed a Memorandum in support of his Motion, Pet'r's Mem., ECF No. 85-1, and the Government has opposed it, Resp't's Opp'n, ECF No. 91.

---

[1] Mormon also previously filed a Motion to Amend Sentence based on the retroactive application of Amendment 782 to the U.S. Sentencing Guidelines. ECF No. 81. Shortly after Mormon filed his Motion, the Court sent him a letter informing him that Office of the Federal Public Defender would file a motion on his behalf if he qualified for the requested relief. ECF No. 86. No such motion has been filed. Accordingly, Mormon's Motion to Amend Sentence is denied without prejudice.

No hearing is necessary. *See* Loc. R. 105.6 (D. Md.); *Rules Governing § 2255 Cases*, R. 8(a). Apart from some of Mormon's ineffective-assistance-of-counsel claims, the Court lacks jurisdiction to review the issues raised in the Motion because Mormon either already litigated the issues on direct appeal or failed to do so and has not met § 2255's cause-and-prejudice standard. Regarding Mormon's ineffective-assistance-of-counsel claims, I do not find that he received objectively unreasonable representation or that a reasonable probability exists that the outcome of his trial or appeal would have been different had counsel conducted the representation differently. Accordingly, I will deny the Motion.

## Background

While Mormon was being held at the Federal Correctional Institute in Gilmer, West Virginia ("FCI-Gilmer") for a violation of supervised release, a grand jury indicted him on drug distribution charges. Indictment, ECF No. 1; Pet'r's Mot. G1-1. After the Grand Jury handed down its indictment, Special Agents from the Federal Bureau of Investigation drove to FCI-Gilmer to interview Mormon in hopes of enlisting his cooperation. July 31, 2014 Trial Tr. 57:3–6, ECF No. 75. The FBI agents administered *Miranda* warnings, and Mormon orally waived his rights but initially declined to answer questions. *Id.* at 57:2–4, 8–9. Although the agents did not make any "guarantees," they told Mormon that "cooperation would be used for consideration on the pending charges." *Id.* at 61:3–4. After a period of forty-five minutes, Mormon admitted to selling crack and powder cocaine out of his business—Premier Auto Salon—and identified Sharron Watson as one of his customers. *Id.* at 59:8–14. Mormon estimated that he sold Watson between ten to twelve ounces of crack cocaine once or twice per week. *Id.* at 59:15–16. Mormon also informed the agents that he purchased cocaine from a supplier in one- or half-kilogram increments on a daily or weekly basis and sold to between

twenty and thirty customers on busy days. *Id.* at 59: 25–60:1, 60:18–19. Although Mormon was forthcoming about many details of his criminal activities, he refused to disclose the name of his supplier without first speaking to an attorney. *Id.* at 61:8–9.[2]

Prior to trial, Mormon filed a Motion to Suppress, which argued, among other things, that the Government elicited his confession in violation of the Fifth and Sixth Amendments. Pet'r's Mot. Suppress ¶ 3, ECF No. 12. At a pretrial hearing, Judge Rodger Titus denied the Motion to Suppress, holding that the agents advised Mormon of his *Miranda* rights and that he voluntarily waived them. Pretrial Hr'g Tr. 85:12–86:7, ECF No. 64. On direct appeal, Mormon unsuccessfully challenged Judge Titus's decision to admit his confession into evidence by arguing that the confession was involuntary. *United States v. Mormon*, 590 F. App'x 214, 215 (4th Cir. 2014) (per curiam). The appeal did not challenge the admissibility of the inculpatory statements on Sixth Amendment grounds. *See id.* Mormon appealed the decision to the Supreme Court, which denied certiorari. *Mormon v. United States*, 135 S. Ct. 2069 (2015) (mem.). He then filed this Motion.

### Standard of Review

28 U.S.C. § 2255(a) permits a prisoner to file a motion to vacate, set aside, or correct his sentence on the ground that it "was imposed in violation of the Constitution or laws of the United States." The prisoner must prove his case by a preponderance of the evidence. *Brown v. United States*, Civil No. DKC-10-2569 & Criminal No. DKC 08-529, 2013 WL 4562276, at *5 (D. Md. Aug. 27, 2013). If the court finds for the prisoner, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the

---

[2] As Mormon's confession was the pivotal piece of evidence in the trial and because the bulk of his Motion is focused on suppressing the inculpatory statements derived from the confession, this factual background is addressed to that issue. I will highlight additional facts as they become necessary to address other issues raised in the Motion.

sentence as may appear appropriate." 28 U.S.C. § 2255(b). A prisoner cannot relitigate claims raised and rejected on appeal through a § 2255 motion "absent a[n] intervening change in the relevant law. *Vasquez v. United States*, Civil No. DKC-10-3328 & Criminal No. DKC-05-393, 2014 WL 823750, at *2 (D. Md. Feb. 28, 2014) (citing *United States v. Roane*, 378 F.3d 396 n.7 (4th Cir. 2004)). Similarly, a prisoner cannot raise a new issue that he did not object to at trial or raise on direct appeal absent "(1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 167 (1982).

**<u>Discussion</u>**

The bulk of Mormon's numerous claims allege either ineffective assistance of counsel or prosecutorial misconduct. I will therefore articulate the standards governing these claims before discussing them individually.

Ineffective-assistance-of-counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny. To satisfy the *Strickland* standard, a petitioner must prove: (1) "that counsel's representation fell below an objective standard of reasonableness"; and (2) that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 691. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 689 (citation omitted). This presumption is so strong that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered "fundamentally unfair" by counsel's affirmative omissions or errors. *Id.* at 700. When it comes to representation on appeal, "reviewing courts

4

must accord appellate counsel 'the presumption that he decided which issues were most likely to afford relief on appeal.' " *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (quoting *Pruett v. Thompson*, 996 F.2d 1450, 1568 (4th Cir. 1993)). "Generally, only when ignored issues are clearly stronger than those presented [on appeal], will the presumption of ineffective assistance of counsel be overcome." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).

"To prevail on a claim of prosecutorial misconduct, a defendant must show (1) that the prosecutor's remarks and conduct were, in fact, improper and (2) that such remarks or conduct prejudiced the defendant to such an extent as to deprive the defendant of a fair trial." *United States v. Allen*, 491 F.3d 178, 191 (4th Cir. 2007).

## Issues Litigated on Appeal

Mormon argues that the Government committed prosecutorial misconduct by making improper remarks during closing arguments and that counsel rendered ineffective assistance by failing to object to the statements at the time they were made or adequately raise the issue on appeal. Pet'r's Mot. G2-8 to -9, G3-3 to -5. Although the Government conceded that the remarks at issue were indeed improper, the Fourth Circuit held that they were non-prejudicial. *Mormon*, 590 F. App'x at 216. Accordingly, this Court lacks jurisdiction to address these issues again, whether under the guise of a prosecutorial-misconduct or ineffective-assistance-of-counsel claim. *See Vasquez*, 2014 WL 823750, at *2.

## Procedural Default

A. Confession

As Mormon recognizes, his confession to selling large quantities of cocaine played a pivotal role in his conviction. Pet'r's Mot. G1-3 ("Petitioner's deliberately elicited statements

5

qua confession was used in the government's case in chief and was the single deciding factor in the jury returning guilty verdict and conviction . . . .").  He argues that admission of his inculpatory statements violated his Sixth Amendment right to counsel and that the Government committed prosecutorial misconduct by eliciting the confession from him.  Pet'r's Mot. G1-1 to -3, G3-1 to -2.  He further argues that he received ineffective assistance of counsel because his lawyers failed to pursue a Sixth Amendment argument at trial and on appeal.  *Id.* at G2-1 to -2, -5 to -6, -10 to -11.[3]  Trial counsel attempted to suppress the statement on Fifth and Sixth Amendment grounds, Mot. Suppress ¶ 3, but focused during the pretrial conference on whether Mormon waived his *Miranda* rights and whether the confession was involuntary, making its introduction at trial a violation of Mormon's Fifth Amendment due process rights, Pretrial Hr'g Tr. 76:15–78:1.  Appellate counsel unsuccessfully pursued the due process argument before the Fourth Circuit, but did not attempt to revive the Sixth Amendment argument.  *Mormon*, 590 F. App'x at 215.  According to Mormon, appellate counsel explained to him that "[t]he Sixth Amendment was not preserved for appellate review and even if it were the end result will be the same in your case, i.e., we either would win on both Fifth and Sixth Amendments or lose on both."  Pet'r's Mot. G2-11.  Appellate counsel's assessment reflects Supreme Court case law holding that "an accused who is admonished with the [*Miranda*] warnings . . . has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one."  *Patterson v. Illinois*, 487 U.S. 285, 296 (1988).  In other words, in contexts such as those in which Mormon confessed—namely, custodial interrogation in which law

---

[3] Mormon belatedly seeks permission to supplement his ineffective-assistance-of-counsel claim regarding investigation of the circumstances surrounding his confession by specifying the identity of a witness to the interrogation.  ECF No. 111.  As explained below, this information would make no difference in my analysis.

enforcement officers advise the suspect of his rights—the Fifth and Sixth Amendment inquiries are essentially one and the same.

Had trial counsel emphasized the Sixth Amendment right to counsel during the pretrial hearing or had appellate counsel raised the argument on appeal, either court's analysis would have duplicated the holding that Mormon was advised of and voluntarily waived his right to counsel during the interrogation. Thus, Mormon was not prejudiced by counsel's decision to attempt to suppress his confession by relying largely on the Fifth Amendment rather than the Sixth Amendment. I therefore cannot revisit the issue of whether Mormon's confession should have been suppressed. *See Frady*, 456 U.S. at 167. For the same reason, trial counsel's focus on the Fifth Amendment to the exclusion of the Sixth Amendment at the pretrial hearing and appellate counsel's failure to raise the Sixth Amendment right to counsel on appeal does not amount to constitutionally deficient representation, *see Strickland*, 466 U.S. at 691, and Mormon's conviction is not tainted by the Government's elicitation of the confession, *see Allen*, 491 F.3d at 191. Accordingly, I will deny all of Mormon's claims related to the admission of his confession.

B. Confrontation Clause

During the trial, FBI Special Agent Stephen Hunter testified that investigators became aware of Mormon's activities through information provided by an unnamed confidential informant. July 31, 2013 Trail Tr. 40:24–41:5, 44:21–45:3. Mormon argues that this testimony and video and audio recordings taken by the confidential informant and introduced at trial violate his Confrontation Clause rights. Pet'r's Mot. G1-3; Pet'r's Mem. 13–18. Whether or not this testimony or evidence contained any testimonial hearsay, *see Crawford v. Washington*, 541 U.S. 36, 68 (2004), Mormon did not raise the issue at trial or on direct appeal and provides no

explanation for his procedural default. Accordingly, the Court lacks jurisdiction to consider the issue now. *See Frady*, 456 U.S. at 167. Moreover, were I to address the issue, the outcome would be the same. I agree with the Government that Mormon's Confrontation Clause objections are without merit because the statements he challenged were not (1) offered for their truth or (2) testimonial (i.e., made under circumstances that would lead an objective witness reasonably to believe they would be used at a subsequent trial). Resp't's Opp'n 11–12.

## C. Government's Charging Decisions

Mormon alleges that the Government committed prosecutorial misconduct by charging him with a conspiracy to distribute 280 grams or more of cocaine base when a transaction involving only 28 grams led to his apprehension. Pet'r's Mot. G3-2. Similarly, he faults the Government for treating what he views as multiple unrelated conspiracies as a single conspiracy for which he was held criminally responsible. *Id.* at G3-2 to -3. It is unclear what legal authority Mormon believes underlies these claims. But, in any event, he provides no justification for his failure to raise these issues at trial or on direct appeal, so I may not consider them now.

## Ineffective Assistance of Counsel

Mormon's remaining claims all allege ineffective assistance of counsel at trial and on appeal. I will address each of them in turn.

## A. Failure to Object to Admission of Evidence

Mormon suggests that trial counsel should have objected under Fed. R. Evid. 404(b) to the introduction of statements and video of alleged co-conspirator Ron Jura Beason because they implied that Mormon was involved in other, uncharged crimes. Mormon misunderstands the type of evidence to which Rule 404 pertains, but, in any event, the Fourth Circuit held on direct appeal that the evidence at issue was admissible as a non-testimonial, co-conspirator statement

under Fed. R. Evid. 801(d)(1)(E). *Mormon*, 590 F. App'x at 215–16. Accordingly, even if a colorable argument existed for exclusion of the statements and video as character evidence, Mormon was not prejudiced by trial counsel's failure to object under Rule 404 because the evidence was admissible on other grounds. *See* Fed. R. Evid. 105 (evidence may be admissible for one purpose, but not for another). Accordingly, trial counsel did not render ineffective assistance by failing to object on Rule 404 grounds. *See Strickland*, 466 U.S. at 691.

Similarly, Mormon argues that trial counsel should have objected on Fed. R. Evid. 404(b) and 403 grounds to introduction of several other pieces of evidence, including: two ounces of cocaine and cocaine base; FBI agent testimony about the source of the same; and to questions concerning prosecution witness Sharron Watson's past drug use and dealing. Pet'r's Mot. G2-3 to -5. Irrespective of these arguments' merit, a competent and effective attorney would be unwise to make every single theoretically colorable evidentiary objection. Sometimes, a client is better served when a lawyer withholds his fire when only weak arguments can be marshalled in favor of exclusion or where the evidence introduced is non-prejudicial in order to bolster his persuasiveness when he makes stronger or more vital evidentiary objections. Mormon has provided no evidence sufficient to overcome the strong presumption that trial counsel's failure to object to introduction of the enumerated items and statements amounted to sound trial strategy. Accordingly, he has not demonstrated that he received ineffective assistance. *See Strickland*, 466 U.S. at 689.

## B. Failure to Call Witnesses

Mormon faults trial counsel for failing to ascertain the identity of the Government's confidential informant and call him or her as a witness. Pet'r's Mot. G2-4. But he does not explain what the confidential informant would have testified to if called as a witness. Mormon

also criticizes trial counsel for declining to call Ron Jura Beason. *Id.* Beason has submitted an affidavit in which he identifies the Government's confidential informant, and says that he was willing to testify that neither the confidential informant nor prosecution witness Sharron Watson purchased drugs from Mormon on the day in question. Beason Aff., Pet'r's Mot. Ex. 4, ECF No. 85-4. According to Mormon, trial counsel advised against calling Beason or other unnamed witnesses because "if petitioner did present his witnesses, but didn't take the stand himself, he would appear weak and guilty to the jury." Pet'r's Mot. G2-4. It appears therefore that trial counsel declined to call the confidential informant or Beason based on a strategic calculation that Mormon would be better served by forcing the Government to carry its burden to prove guilt beyond a reasonable doubt rather than calling his own witnesses. Mormon has not presented sufficient evidence to overcome the strong presumption that trial counsel executed a sound trial strategy. *See Strickland*, 466 U.S. at 689.

C. Failure to File Discovery Motions

Mormon also criticizes trial counsel for failing to file discovery motions or motions to suppress "drug evidence, phone record[s], [and] electronic evidence." Pet'r's Mot. G2-6. According to Mormon, "Had counsel filed a motion to obtain discovery they would have been aware of all the evidence the government intended to present that did not come from or could not be linked to petitioner. Evidence that was not charged in the indictment would have been suppressed had counsel filed appropriate motions or even objected to their admittance at trial." *Id.* This conclusory analysis provides no basis for the conclusion that Mormon would have prevailed on any discovery motions or motions to suppress had counsel filed them on his behalf, let alone that those motions would have made a difference in the outcome of the case,

particularly since Mormon confessed to the charged crime. Accordingly, Mormon has not met his burden in demonstrating ineffective assistance. *See Strickland*, 466 U.S. at 688, 691.

   D. <u>Failure to Provide Petitioner with Discovery Materials</u>

Mormon argues that trial counsel rendered ineffective assistance by failing to provide him with discovery for his personal review. Pet'r's Mot. G2-7. Mormon's own Motion explains entirely clearly why trial counsel did not abide by his wishes. According to his account, trial counsel explained at the pretrial hearing that the defense "signed a standard discovery agreement with the prosecution in which they could not give petitioner his discovery but only show it to him." *Id.* at G2-8. He then relates that I "verbally ordered the defense and prosecution to get together and extract any information the prosecution felt could be used as possible witness intimidation and give petitioner the rest of the discovery in its entirety." *Id.* When Mormon insisted that his counsel was not complying with my order, I referred the matter to Magistrate Judge William Connelly. ECF No. 48. According to Mormon, Magistrate Judge Connelly "found defense counsel did nothing wrong and satisfied their obligation by showing petitioner pieces of discovery." Mormon raised this issue again while his § 2255 Motion was pending by filing a Motion to Compel. ECF No. 101. Defense counsel responded to the Motion and again explained that the discovery agreement bars Mormon from having independent access to his case file. *Id.* at 105. The Government also made the same argument. ECF No. 106. I will not revisit Magistrate Judge Connelly's conclusion that defense counsel fully complied with their obligations in conformance with my orders and the discovery agreement. Accordingly, defense counsel did not render ineffective assistance by failing to give Mormon full access to his case file. For the same reason, I will deny Mormon's Motion to Compel.

E.  Failure to Secure Plea Agreement

Mormon faults trial counsel for "never advis[ing] [him] of possible plea options without government cooperation" and for failing to "attempt to acquire" the same.  Notably, Mormon provides no evidence that the Government was ever willing or interested in offering a plea agreement that did not entail his agreement to cooperate in future cases.  Indeed, according to his own affidavit, trial counsel informed him that the Government's position was "[n]o pleas: it's either you cooperate or go to trial."  Mormon Aff. 4, Pet'r's Mot. Ex. 3, ECF No. 85-3.  Defense counsel did not provide ineffective assistance by failing to secure a plea agreement that the Government was unwilling to offer.

F.  Appellate Representation

Aside from his claims related to appellate counsel's failure to argue that admission of his confession violated the Sixth Amendment, which I addressed above, Mormon argues that appellate counsel was ineffective in three different ways.  First, he claims that appellate counsel never reviewed discovery in his case, thereby weakening his appeal, but he does not explain what defense proper review of the discovery would have permitted.  Pet'r's Mot. G2-10. Accordingly, Mormon has not demonstrated prejudice based on appellate counsel's supposed failure to review the case file.  *See Strickland*, 466 U.S. at 691.  Second, he faults appellate counsel for failing to raise trial counsel's ineffective assistance on direct appeal.  Pet'r's Mot. G2-11 to -12.  But, as my prior discussion of trial counsel's supposed deficiencies makes clear, Mormon has not demonstrated that this argument was "clearly stronger than those presented." *Smith*, 528 U.S. at 288.  He has not, therefore, demonstrated that appellate counsel rendered ineffective assistance by failing to raise trial counsel's representation.  Finally, Mormon objects to appellate counsel's refusal to file a petition for writ of certiorari on his behalf.  Pet'r's Mot.

G2-11 to -12.  But criminal defendants do not enjoy a right to counsel to file a certiorari petition in the United States Supreme Court.  *Ross v. Moffitt*, 417 U.S. 600, 617–18 (1974).  Thus, appellate counsel could not have rendered ineffective assistance by declining to represent him for the purposes of petitioning for certiorari.

## Conclusion

Of the many claims that Mormon raises attacking his conviction, several are not reviewable either because he raised them on direct appeal or because he failed to do so and has not met § 2255's cause-and-prejudice standard.  The remaining ineffective-assistance-of-counsel claims all fail either because he has not demonstrated that counsel acted objectively unreasonably or that the outcome of the case would have been different had counsel represented him differently.  Accordingly, Mormon's Motion is denied.

A separate Order follows.


Date: July 11, 2017                                          _____/S/_____
                                                            Paul W. Grimm
                                                            United States District Judge